*398
By the Court:

McCunn, J.
The evidence on both sides goes to show that a great deal of negotiation took place between defendants and one Meeks, the agent for the plaintiffs, and the whole current of such testimony—Meeks’ included—goes to show, and there is no other proof to the contrary, that from the beginning of the negotiation to the end thereof the defendants always guarded against allowing the plaintiffs the right to cook in said premises. Indeed, the negotiation was nearly all about this single question of cooking, and such negotiation extended for over a period of two weeks.
That from the beginning to the end 'of these negotiations the most persistent efforts were made by Meeks, on behalf of the plaintiffs, and under the stimulus of a bonus offered by them, to obtain from the defendants the right to use the premises in question for the purposes of a restaurant, and to do cooking therein, but that they were met throughout the whole negotiation by the unqualified refusal of the defendants to allow any cooking to be done in the premises, even at any rent, and the object of this refusal is plain to the commonest mind.
Cooking in the basement would have mined the usefulness oi the whole premises, and perhaps would have been the means oí destroying the entire rental of the property. That these terms— the refusal to allow cooking—were communicated by Meeks to the respondents, and finally agreed to by them.
That thereupon the plaintiffs wanted their lease “right off,” and when informed that they could not get it for some days, for the reason that defendants had not secured the principal lease to themselves, plaintiffs were dissatisfied and said they must have something to secure the place so that it could not be let to any other party. That, thereupon, Meeks called upon the defendant White and told him that the plaintiffs wanted some sort of paper to secure the place. That White answered, “ Well, I can’t give them a lease, but my word is as good as my bond.” That he did not object to giving them some paper, but at that time he was not willing to do so.
*399 That Heeks then went back to the plaintiffs, and they insisted upon having a writing.
That he called a second time upon White and told him the plaintiffs were not satisfied with his word, and the result was that White hastily drew the paper in question and made a mistake in not inserting the prohibitory clause, and delivered it to Heeks on condition that the place should be used by the plaintiffs for a wholesale and retail wine and liquor business, saying he did not object to cold lunch or billiard-tables, but would allow-no cooking ; and added, that this paper was simply to let the plaintiffs take possession of the premises.
2sTow this is the evidence upon the subject. It is uncontradicted by the plaintiffs; nay, it is even corroborated by them in many respects. Heeks, their agent, and the person who made the agreement and did all the business, testifies that a mistake was made in not inserting the prohibitory clause about cooking. White testifies to the same thing. It was clearly understood that it should be inserted; and the question now presented to this Court is : Can we relieve the parties hereto from this mistake ? I am clearly of opinion we can, and, therefore, the justice erred in striking out all the testimony showing the mistake.
It is quite clear from the evidence that it is a case of surprise, and that the surprise was mutual, and that it was clearly contrary to the intentions of both parties that the right to cook in these premises should be granted, and that the mistake was not discovered by either of them until after the plaintiffs had taken legal advice upon the subject.
The writing was not made until days after the verbal contract between the parties had been settled, and it was not made for the purpose of reducing such verbal contract to writing.
It was simply drawn by White, at the urgent request of the plaintiffs’ agent, Heeks, and the omission was made in drawing it up. White was reluctant to give any writing, saying his word was as good as his bond, and at first refused; but, upon a second application to him, after having been assured that the plaintiffs would not be satisfied without it, he sat down and wrote this *400 paper, and delivered it to Meeks, saying: “ This will enable them to take possession of the premises, and when the lease comes to be drawn up I will insert a clause giving them the privilege of a cold lunch, but I will allow no cooking, giving as a reason for not inserting these words in the paper, that doing so would be egual to making a lease! It is impossible to resist the conviction that in executing this written agreement White acted without due deliberation, and under confused a,nd erroneous impressions with rega/rd to the effect of the instrument; and it is also clear that the plaintiffs, from the conversations and negotiations in the premises, believed they had no right to carry on cooking in the premises, until after they had consulted with their lawyer, and until he informed them that no prohibitory clause was in their agreement.
The rule is that where the surprise is mutual, as in this case, the Court can always interfere; and cases of surprise mixed with mistakes in law stand upon ground peculiar to themselves, and are quite independent of the general rule.
In such cases the acts of the parties are without due deliberation, and are held invalid upon the principle in equity to protect those of whom undue advantage is taken. This is the broad doc. trine laid down by Story in his Equity Jurisprudence, 6th ed., sec-134, and is the doctrine held in the case of Matthews v. Terwilliger, 3 Barbour, S. C. R, p. 50.
I know the rule has been pretty generally held (not always) that mistakes in law are not a ground for reforming agreements, but I never could see the justice of such a rule; that a plain and acknowledged mistake in law is beyond the reach of equity is an ancient and unsound rule, and I for one have frequently departed from it, and I am happy to say that the dispositions of our courts at the present time as a general thing are inclined to abolish the distinction, and -have now made great inroads upon that ancient principle, and hold that where a party is taken'by surprise, either of law or fact, or where he has not sufficient time to act with caution tliis will relieve him from his mistake.
This principle was recognized in Matthews v. Terwilliger, cited *401 above. Courts of equity would be of little value if they could suppress only positive frauds and leave such material mistakes as the one under consideration—mistakes innocently made—to work intolerable mischief, contrary to the intentions of the party. I know that the compelling of specific performances by the courts is always a matter of sound discretion according to the circumstances of the case; but in a case of this kind, where the error is mutual, there would be as much mischief done by refusing relief to the defendants, errors such as they have committed, as there would be in allowing parol evidence in all cases to vary written contracts; and to allow the‘plaintiffs in this case to take advantage of a mistake made in the most innocent manner, and by both parties, would be to allow that act, originating in innocence, to operate ultimately as a fraud, and would be enabling the plaintiffs to receive the benefit of such mistake under the sheltering of a rule found to promote it.
Under the circumstances of the case, we do not think the Court should exercise its power to enforce the plaintiffs’ construction of a writing which was not intended to express the views of the parties interested, and where it is manifest that, owing to the quickness- and haste with which the agreement was signed, and to the surprise and inadvertence of both parties, it does not express the intent of the parties.
There is no doubt in our minds but that Meeks enticed the defendant'White to sign this paper, although at the time of signing it was intended by both that the restraining clause should be inserted. Indeed, Meeks, testifying in the interest of the plain, tiffs, says positively a mistake was made; and to allow such a state of facts to enure to the benefit of either party would be tantamount to sanctioning a fraudulent proceeding.
The contrary has been the rule, and courts of equity have always been vigilant to seize hold of such circumstances to enable them to relieve a party from unjust loss, and to deprive the other party of taking unconscionable advantage. Beyond a doubt, at the time this instrument was drawn, both White, on the part of himself and the other defendants, and Meeks, who was the sole *402 agent of the plaintiffs, through forgetfulness or inadvertence, left this restricting clause out, or thought it was not necessary to put it in, as the agreement was a temporary one, and the courts of. equity have always relieved from such forgetfulness.
This was the rule held in the case of Kelly v. Salior, 9 M. & W., 54, and in the case of Bell v. Gardiner, 4 Mann & Granger, 10.
The judgment should be reversed and a new trial ordered, costs to abide the event.
Barbour, C. J., dissented.